**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | Case No. 3:19-cr-436-SI-3 |
| v. | **OPINION AND ORDER** |
| **EDGAR OMAR QUIROZ RODRIGUEZ**, | |
| Defendant. | |

Scott E. Bradford, United States Attorney, and Sarah Barr, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, DISTRICT OF OREGON, 1000 SW Third Avenue, Suite 600, Portland, OR 97204. Of Attorneys for United States of America.

Michael R. Levine, LEVINE & MCHENRY LLC, 1050 SW Sixth Avenue, Suite 1414, Portland, OR 97204. Of Attorneys for Edgar Omar Quiroz Rodriguez.

**Michael H. Simon, District Judge.**

Defendant Edgar Omar Quiroz Rodriguez ("Quiroz Rodriguez"), through counsel, has filed an Amended Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 ("Motion"), asserting both ineffective assistance of counsel and prosecutorial misconduct. ECF 1823. The Motion has been fully briefed, and the Court finds no basis for granting a hearing. For the reasons discussed below, the Court denies the Motion and declines to issue a certificate of appealability.

PAGE 1 – OPINION AND ORDER

**STANDARDS**

**A.  Section 2255**

Section 2255 permits a federal prisoner in custody under sentence to move the court that imposed the sentence to vacate, set aside, or correct the sentence on the ground that:

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . .

28 U.S.C. § 2255(a). A prisoner seeking relief under § 2255 must file that motion within a one-year statute of limitations. *Id.* § 2255(f).

Under § 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section '[u]nless the motions and the files and records of the case *conclusively show* that the prisoner is entitled to no relief.'" *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (emphasis in original) (quoting § 2255). In determining whether a § 2255 motion requires a hearing, "[t]he standard essentially is whether the movant has made specific factual allegations that, if true, state a claim on which relief could be granted." *United States v. Withers*, 638 F.3d 1055, 1062 (9th Cir. 2011) (quotation marks omitted) (alteration in original). A district court may dismiss a § 2255 motion based on a facial review of the record "only if the allegations in the motion, when viewed against the record, do not give rise to a claim for relief or are 'palpably incredible or patently frivolous.'" *Id.* at 1062-63 (quoting *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984)). Merely conclusory statements in a § 2255 motion are insufficient to require a hearing. *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980).

If a court denies a habeas petition, the court may issue a certificate of appealability if "jurists of reason could disagree with the district court's resolution of [the prisoner's]

constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *see* 28 U.S.C. § 2253(c)(2). Although a prisoner need not prove the merits of the prisoner's case for the court to issue a certificate of appealability, the prisoner must show "something more than the absence of frivolity or the existence of mere good faith on his or her part." *Miller-El*, 537 U.S. at 338 (quotation marks omitted).

## B.  Ineffective Assistance of Counsel

The established federal law governing claims of ineffective assistance of counsel is stated in *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). A challenger must prove (1) that counsel's performance was deficient and (2) that there is a reasonable probability that, but for the deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687.

Under the first prong of *Strickland*, for counsel's performance to be constitutionally deficient, it must fall below an objective standard of reasonableness. *Id.* A "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). "The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687). "[S]trategic choices made after thorough investigation of law and facts" by attorneys "are virtually unchallengeable." *Miles v. Ryan*, 713 F.3d 477, 490 (9th Cir. 2013) (quoting *Strickland*, 466 U.S. at 690).

Under the second prong of *Strickland*, prejudice is established when there is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Because a convicted defendant must satisfy both prongs of the *Strickland* test, failure to establish either deficient performance or prejudice makes it unnecessary to examine the other prong. *See Strickland*, 466 U.S. at 697 (explaining that it is unnecessary for a court evaluating the merits of an ineffective assistance claim to analyze the components of the applicable test in any particular order or to evaluate both components if the petitioner fails to carry his burden as to one aspect of the test).

## BACKGROUND

### A.  Plea and Plea Colloquy

On February 26, 2021, Quiroz Rodriguez pleaded guilty to one count of conspiracy to possess with the intent to distribute and to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(A), and 846, and one count of conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(h), 1956(a)(1)(B)(i), and 1956(a)(1)(A)(i). ECF 1098 at 1. The charges to which he pleaded guilty carried a maximum sentence of life imprisonment with a mandatory minimum sentence of ten years imprisonment for the first count and a maximum sentence of 20 years in prison for the second count. *Id.* Quiroz Rodriguez faced a guideline range of 292-365 months' imprisonment based on the quantity of drugs for which he was found responsible, his supervisory role, and his prior criminal conviction for money laundering. ECF 1199 at 1; ECF 1186 at 4.

Quiroz Rodriguez pleaded guilty. During his plea colloquy, Quiroz Rodriguez stated that he understood the charges alleged against him and confirmed that he understood spoken English and can read English, although he reads better in Spanish. ECF 1378 at 8. The Court provided Quiroz Rodriguez with the services of a Spanish interpreter throughout the entirety of the

PAGE 4 – OPINION AND ORDER

hearing. *Id.* at 4-5, 8. Quiroz Rodriguez confirmed that he spoke with his attorney about the charges and that Quiroz Rodriguez was fully satisfied with the legal advice, representation, and counsel that had been given to him by his attorney, Joshua Pond. *Id.* at 9-10. Quiroz Rodriguez added that Mr. Pond "is doing his job very well." *Id.* at 10. Quiroz Rodriguez confirmed that he discussed the plea agreement with Mr. Pond and gave him permission to sign the plea agreement for Quiroz Robdriguez. *Id.* at 11. He also confirmed that he understood that the terms of the plea agreement were merely recommendations and that the Court could reject the recommendations and impose a more severe sentence. *Id.* at 12.

Quiroz Rodriguez confirmed that he understood that any estimate of the applicable guideline range he was given by Mr. Pond was merely a good faith estimate and that the actual range might be different. *Id.* at 16. The Court found that Quiroz Rodriguez was fully competent and capable of entering an informed plea, that he was aware of the nature and consequences of the plea, and that the pleas of guilty were knowing and voluntary pleas supported by an independent basis in fact containing each of the essential elements of the offenses. *Id.* at 25. The Court accepted Quiroz Rodriguez's guilty pleas and scheduled a sentencing hearing. *Id.* at 25-26.

## B.  Sentencing

The government recommended a 235-month sentence. ECF 1186 at 4-5. The government argued that Quiroz Rodriguez had been previously convicted for the same offense, had previously received the mandatory minimum sentence of 120 months' imprisonment, had been deported from the United States after his released in 2018, had illegally returned to the United States shortly thereafter, and continued his drug trafficking activities but at an elevated role. *Id.* at 5-6. Mr. Pond advocated for the mandatory minimum sentence of 120 months, explaining that this sentence was justified because of the long period of pretrial isolation that Quiroz Rodriguez experienced during COVID-19, the fact that he would be deported after serving his sentence, his

PAGE 5 – OPINION AND ORDER

lack of knowledge or control over the purity of the drugs delivered, and his willingness to engage in rehabilitative treatment while incarcerated. ECF 1379 at 17-19.

The Court sentenced Quiroz Rodriguez to 235 months' imprisonment on each count, with both sentences to be served concurrently, along with the sentence for his supervised release violation. *Id.* at 24-25. The Court explained that the government's recommendation was fair because Quiroz Rodriguez had "already got[ten] a lower sentence from the 2009 conviction, and yet [he] came back to the country, after being deported, and continued the same activities, but, frankly, in a higher and more responsible role." *Id.* at 29.

## C. Pending Motion

In his Motion, Quiroz Rodriguez asserts seven alternative grounds in support of the proposition that he received ineffective assistance of counsel in violation of his rights under the Sixth Amendment. He contends that Mr. Pond failed: (1) to investigate a potential conflict of interest by counsel for a codefendant; (2) thoroughly to review the timeframe of the alleged conspiracy and its events; (3) to conduct an adequate mitigation investigation regarding the motive of Quiroz Rodriguez; (4) thoroughly to explore the relatively brief duration of Quiroz Rodriquez's involvement in the alleged conspiracy; (5) effectively plea bargain to obtain a more favorable agreement from the government; (6) to ensure that Quiroz Rodriguez fully understood the plea agreement; and (7) meaningfully to advocate for Quiroz Rodriquez at sentencing. ECF 1823 at 13-17. Quiroz Rodriguez also asserts three alternative grounds in support of the proposition that the government engaged in prosecutorial misconduct. He contends that the government failed to provide exculpatory evidence, entrapped him into drug trafficking by using an informant, and took advantage of Mr. Pond's ineffective assistance of counsel by treating Quiroz Rodriquez differently than similarly situated codefendants. *Id.* at 17-18.

PAGE 6 – OPINION AND ORDER

Quiroz Rodriguez's Motion was filed by his court-appointed, post-trial counsel Michelle Ryan. ECF 1823. Ms. Ryan later moved to withdraw as counsel for Quiroz Rodriguez (ECF 1887), which the Court allowed and appointed new post-trial counsel, Michael Levine. ECF 1889. Mr. Levine later filed Quiroz Rodriguez's Brief in Support of Motion. ECF 1910. After the government responded (ECF 1915), Mr. Levine filed a reply in support of the pending Motion. ECF 1927. In Mr. Levine's brief filed in support of the Motion, he states: "In his amended 2255 motion, Rodriguez raised 8 claims. In this brief he focuses only on Claim 7 and submits the other claims on the record. In Claim 7 Mr. Rodriguez asserts that Mr. Pond provided deficient performance at sentencing in several respects." ECF 1910 at 10.

## DISCUSSION

### A. Waiver

As noted, Quiroz Rodriguez raised numerous grounds for relief in his Motion. But in his supporting brief, he advanced only one ground, ineffective assistance of counsel at sentencing, leaving all other grounds to be considered "on the record." Although Quiroz Rodriguez purports to preserve his arguments asserting ineffective assistance at sentencing by submitting them "on the record," this is insufficient to avoid abandonment of these claims. Generally, a party must specifically and distinctly argue an issue in the opening brief to present that issue for consideration. *See, e.g.*, *Consumer Fin. Prot. Bureau v. Noh*, 2022 WL 20581960, at *2 (C.D. Cal. Jan 18, 2022) (noting that a court is not "required to address perfunctory and undeveloped arguments" (quoting *Khademi v. S. Orange Cnty. Cmty. Coll. Dist.*, 194 F. Supp. 2d 1011, 1027 (C.D. Cal. 2002))); *see also Ventress v. Japan Airlines*, 747 F.3d 716, 723 n.8 (9th Cir. 2014) (declining to address an "undeveloped argument . . . not supported by citations to the record, argument, or any legal authority"); *Crime Just. & Am., Inc. v. Honea*, 876 F.3d 966, 978 (9th Cir. 2017) ("Issues raised in a brief which are not supported by argument are deemed abandoned."

(quoting *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988))). In addition, Quiroz Rodriguez has said nothing in his opening brief about any purported prosecutorial misconduct.

The Court concludes that Quiroz Rodriguez has waived all grounds for relief except his argument for ineffective assistance at sentencing. Nevertheless, out of an abundance of caution, the Court will briefly address the abandoned grounds as well.

## B. Ineffective Assistance of Counsel

To show ineffective assistance of counsel, Quiroz Rodriguez must overcome the presumption that counsel's conduct falls within an objective standard of reasonableness. *See Strickland*, 466 U.S. at 686-89. In addition, Quiroz Rodriguez must show that he suffered prejudice because of deficient performance. *Id.* at 687. To show prejudice under *Strickland*,

> [i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding.

*Id.* at 693 (citation omitted). Thus, Quiroz Rodriguez must show not only that the allegedly deficient acts or omissions by Mr. Pond influenced the outcome, but also that it would have undermined the reliability of his plea or sentence.

### 1. Failure to Investigate

The scope of a defense counsel's duty to investigate the case is to "make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003). As shown below, Mr. Pond made reasonable decisions not to investigate or not to investigate further the issues raised in Quiroz Rodriguez's Motion.

Quiroz Rodriguez asserts that Mr. Pond failed to investigate a conflict of interest because Quiroz Rodriguez's counsel from his previous federal drug case, Per Olson, was now

PAGE 8 – OPINION AND ORDER

representing a codefendant in this case. Quiroz Rodriguez, however, does not assert that there was an actual conflict of interest or that further investigation would have uncovered an actual conflict of interest. Instead, he states only that Mr. Pond's advice to waive the conflict of interest without further investigation was inadequate assistance.

The Court held a hearing on this issue during which Mr. Olson stated that he did not believe consent was necessary for his current representation but that he would honor Quiroz Rodriguez's request if he articulated a conflict or concern. ECF 1260 at 14. Quiroz Rodriguez did not articulate a conflict or concern regarding Mr. Olson, and he consented to Mr. Olson continuing to represent his codefendant. ECF 504. In his declaration filed in support of the pending Motion, Quiroz Rodriguez admits that he told Mr. Pond it was "okay" for Mr. Olson to continue representing his codefendant. ECF 1906 at 11. Thus, Mr. Pond's decision not to investigate the conflict further was within the range of professionally reasonable conduct. Moreover, Quiroz Rodriguez has not shown that he was prejudiced by any potential conflict. "Prejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Strickland*, 466 U.S. at 692 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980)).

Quiroz Rodriguez also contends that Mr. Pond failed to investigate the facts, resulting in his failure to discover that Quiroz Rodriguez's involvement in both charges was purportedly more limited than the government claimed. There is ample evidence that *Quiroz Rodriguez* was involved for more than the three months he now asserts. Quiroz Rodriguez stated that he began working for the drug trafficking organization ("DTO") in November 2018, but he was repeatedly caught on intercepted communications conducting drug trafficking activities until August 2019.

PAGE 9 – OPINION AND ORDER

The strategic choices made by Mr. Pond not to investigate this further based on "conversations with the defendant and a review of the prosecution's evidence" were reasonable. *Strickland*, 466 U.S. at 681.

Quiroz Rodriguez also maintains that Mr. Pond failed to conduct a mitigation investigation to show that Quiroz Rodriguez's motive was not financial. It was reasonable for Mr. Pond not to investigate his client's motive based on the conversations that Mr. Pond had with his client. Further, regardless of Quiroz Rodriguez's motive, the Court explained that it imposed the 235-month sentence because Quiroz Rodriguez was previously convicted of the same crime, was deported, illegally reentered the United States, and then continued to engage in the same criminal activity at an elevated role.

### 2. Failure to Plea Bargain Effectively

Quiroz Rodriguez also asserts that Mr. Pond failed to discover evidence and effectively plea bargain in a way that might have resulted in a more favorable plea agreement. Quiroz Rodriguez, however, does not identify any factual support for his statement that Mr. Pond would have discovered any evidence that would have resulted in a more favorable plea concession from the government. Further, "[t]here is no constitutional right to a plea bargain, and the decision whether to offer a plea bargain is a matter of prosecutorial discretion." *United States v. Moody*, 778 F.2d 1380, 1385-86 (9th Cir. 1985), *amended*, 791 F.2d 707 (9th Cir. 1986). In addition, the government asserts that no better offer was coming to Quiroz Rodriguez. ECF 1915 at 24.

### 3. Failure to Ensure that Petitioner Understood Plea Agreement

Quiroz Rodriguez states that Mr. Pond failed to ensure Quiroz Rodriguez understood the plea agreement and that Mr. Pond told Quiroz Rodriguez that the government had falsely promised that it would request, and he would receive, a maximum of 10 years imprisonment. Under oath during his plea colloquy with the Court, however, Quiroz Rodriguez stated that no

PAGE 10 – OPINION AND ORDER

promises were given to him outside of the plea agreement. ECF 1378 at 11-12.[1] He confirmed to the Court that he read the plea agreement with counsel, understood it, had his questions answered to his satisfaction, and authorized counsel to sign it on his behalf. ECF 1378 at 10-11. Quiroz Rodriguez also acknowledged under oath that he understood that the Court could reject the parties' recommendations and "impose a sentence that is more severe than [he] may anticipate." *Id.* at 12. His "statements at the plea colloquy carry a strong presumption of truth." *Muth v. Fondren*, 676 F.3d 815, 821 (9th Cir. 2012), *as amended* (May 31, 2012); *see also Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) ("[T]he representations of the defendant [at a plea hearing] . . . as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity."). Quiroz Rodriguez has failed to overcome this presumption.

### 4. Failure to Meaningfully Advocate at Sentencing

Quiroz Rodriguez argues that Mr. Pond failed meaningfully to advocate for him at sentencing. He identifies eight specific alleged errors and omissions that Mr. Pond purportedly made during the sentencing.[2] Two of the errors are that Mr. Pond argued that Quiroz Rodriguez was a lawful permanent resident when he is not and that Quiroz Rodriguez was not charged with conspiracy when he was. These errors can reasonably be understood as inadvertent mistakes.

---

[1] Although the Court asked Quiroz Rodriquez whether anyone from the government gave him any promises outside of the plea agreement, if the government made a promise through Mr. Pond that Quiroz Rodiriguez would receive a sentence of only 10 years' imprisonment, Quiroz Rodriguez need to inform the Court of that in response to the Court's question, but he did not.

[2] The Court addresses the eight alleged errors as stated in the brief filed by Mr. Levine, which are slightly different than the errors alleged in the Motion filed by Ms. Ryan.

Mr. Pond stated at other times that Quiroz Rodriguez was in the country illegally, *see* ECF 1375 at 6, and nothing suggests that the Court relied on either erroneous statement.

The rest of the alleged misconduct represents strategy choices that were well within the range of professionally reasonable judgment. Quiroz Rodriguez asserts three arguments based on Mr. Pond's failure to raise specific claims. Mr. Pond's strategic decisions "must be assessed in light of the information known at the time of the decisions, not in hindsight . . . ." *Strickland*, 466 U.S. at 680. That another lawyer might have acted differently with the benefit of hindsight, or that counsel could have pursued the arguments differently, does not make counsel's representation deficient here. This does not show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

Quiroz Rodriguez also challenges Mr. Pond's argument that Quiroz Rodriguez's conduct was "aberrant," even though he previously had been convicted of a similar crime. This, too, was not unreasonable. It was meant to depict Quiroz Rodriguez as a sober, hardworking man with community support, even in the face of his earlier criminal history.

Quiroz Rodriguez also points to Mr. Pond's argument for a downward variance based on drug purity, notwithstanding that purity is irrelevant to a guideline calculation. This also was not an unreasonable strategy choice in seeking a downward variance, based on the difficulty in arguing for a downward variance due to the Petitioner's criminal history.

Finally, Quiroz Rodriguez raises Mr. Pond's argument for rehabilitation by saying that prison has not worked for Quiroz Rodriguez before and a different treatment environment might be better for him. This, too, was a reasonable strategy by defense counsel.

PAGE 12 – OPINION AND ORDER

### 5. Cumulative Effect

Regardless of any individual evaluation of alleged errors, a court also must consider the cumulative effect of the asserted errors. *See Alcala v. Woodford*, 334 F.3d 862, 893 (9th Cir. 2003) ("The district court correctly weighed all of [the defense attorney's] errors together in order to assess their cumulative impact on Alcala's constitutional rights."). Even if all of Quiroz Rodriguez's claims of erroneous conduct were accepted as true, the cumulative effect of Mr. Pond's errors here would not have prejudiced Quiroz Rodriguez. The Court imposed a sentence of 235 months because Quiroz Rodriguez had already been given the opportunity to receive only a mandatory minimum sentence after his previous conviction, but he returned illegally and committed another serious crime of virtually the same type of offense, albeit in a more serious capacity. ECF 1379 at 24. As the Court noted at sentencing, the sentence could have been substantially higher, and Quiroz Rodriguez was served well by Mr. Pond in persuading the government not to seek more than 235 months. *Id.* Thus, the arguments made by Quiroz Rodriguez in his Motion would not have changed the sentence imposed or the reasons for that sentence.

### C. Prosecutorial Misconduct

As also noted, Quiroz Rodriguez abandoned his arguments asserting prosecutorial misconduct, but the Court will still briefly address them. Quiroz Rodriguez argues that the government committed misconduct by: (1) failing to provide exculpatory evidence from the Drug Enforcement Administration ("DEA") that would have shown that Quiroz Rodriguez was under surveillance when he resided in California; (2) entrapping or engaging in "outrageous conduct" by using a government informant to induce Quiroz Rodriguez to work for the DTO; and (3) taking advantage of the ineffective assistance of counsel by treating Quiroz Rodriguez differently than other similarly situated defendants.

A court should "grant habeas relief for prosecutorial misconduct only when the misconduct prejudiced the petitioner." *Trillo v. Biter*, 769 F.3d 995, 1001 (9th Cir. 2014) (citing *Hein v. Sullivan*, 601 F.3d 897, 914 (9th Cir. 2010). A petitioner must show that the prosecutor's conduct "so infected [the proceeding] with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

Here, Quiroz Rodriguez has failed to establish his claim of prosecutorial misconduct. He fails to show specific facts that there was exculpatory evidence from the DEA, that he was entrapped into working for the DTO, or that the government took advantage of any ineffective assistance of counsel. Quiroz Rodriguez was given a longer sentence than his codefendants because he was "the most responsible defendant that will be before this court" from the DTO. ECF 1915 at 33. Quiroz Rodriguez also has failed to show how any purported misconduct prejudiced him. There is no indication that the asserted misconduct would have affected the plea bargain. Additionally, the purported misconduct would not have affected the sentence imposed because the Court's reasoning for the sentence was Quiroz Rodriguez's conviction, illegal return, and elevated role in the DTO.

## D.  Evidentiary Hearing

The Court concludes that Quiroz Rodriguez has not made specific factual allegations that require an evidentiary hearing. Because his allegations do not give rise to a claim for relief, the Court has evaluated the pending Motion based on a facial review of the record. *See Withers*, 638 F.3d at 1062-63.

## CONCLUSION

The Court DENIES Mr. Quiroz Rodriguez's Amended Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255, ECF 1823. The Court also declines to issue a

PAGE 14 – OPINION AND ORDER

Certificate of Appealability on the basis that Mr. Quiroz Rodriguez has not made a substantial showing that he has been denied a constitutional right.

**IT IS SO ORDERED**.

DATED this 6th day of August, 2026.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

PAGE 15 – OPINION AND ORDER